UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LONNIE HANEY,

              Petitioner,                    Case No. 1:15-cv-1291

v.                                       Honorable Paul L. Maloney

SHANE JACKSON,

              Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Lonnie Haney is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Michigan.  On April 6, 2011, a Kalamazoo County Circuit Court jury found Petitioner guilty of three counts of first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b.  On May 9, 2011, the court sentenced Petitioner as a habitual offender-third offense, MICH. COMP. LAWS § 769.11, to three concurrent terms of imprisonment of 25 to 40 years.

        Petitioner raises 13 grounds for relief, paraphrased as follows:

I.      The trial court abused its discretion by overruling repeated objections to the use of leading questions and repetitive questions whenever the prosecution had not received the desired answer in the direct examination of the complaining witness.

II.     Petitioner was denied a fair trial by plain error where a police officer testified that she knew Petitioner's age because she had to run a criminal history of him.

III.    Petitioner was denied his Sixth Amendment right to the effective assistance of counsel where counsel, with no strategic purpose, failed to properly advise Petitioner about a favorable plea offer.

IV.     Petitioner was deprived of his state and federal constitutional rights to the effective assistance of counsel when trial counsel failed to adequately investigate, failed to present a viable defense and made repeated investigatory and pretrial errors and omissions.

V.      Petitioner was denied his state and federal due process rights when he was arraigned on the information prior to either the district court or circuit courts having acquired subject-matter jurisdiction over the case which created a jurisdictional defect which voided his jury conviction and sentence, thus requiring Petitioner to be immediately released from custody.

VI.     Petitioner was denied his state and federal due process right to an impartial jury drawn from a fair cross section of the community where there was only one black person in the array from which his jury was selected.

VII.    The prosecutor suppressed exculpatory evidence at trial which denied Petitioner's right to due process and a fundamentally fair trial.

VIII.   Petitioner was denied his constitutional right to present a defense when he was not informed by law enforcement, the prosecutor, or defense counsel of his statutory right to submit to a polygraph examination, thus obviating the need for a new trial in the first instance.

IX.     Petitioner was denied his state and federal constitutional Sixth Amendment right to the effective assistance of appellate counsel when, as here, counsel even after being duly advised by Petitioner, still failed to raise meritorious errors as presented in this petition for habeas relief.

X.      The police violated Petitioner's due process rights, rights to a fair trial, and his Fifth and Sixth Amendment rights by failing to scrupulously honor the mandates of the *Miranda* warnings prior to his custodial interrogation; thereby depriving him of the right to remain silent, privilege against self-incrimination, and right to have counsel present.

XI.     The police violated Petitioner's due process rights where they allege that the reason *Miranda* warning were not given to him was because he verbally waived his Fifth and Sixth Amendment rights under *Miranda*.  However, Petitioner did not voluntarily, knowingly, and/or intelligently waive his *Miranda* rights.  The totality of the circumstances surrounding the tape recording of Petitioner's interrogations affirms that he did not waive his *Miranda* rights.

XII.    Court-appointed defense counsel was constitutionally ineffective in failing to move the trial court to suppress his custodial interrogation statements

2

because they were elicited in violation of his Fifth Amendment right to counsel.

XIII.   The prosecutor violated Petitioner's due process and Fourteenth Amendment rights by using the known perjurious trial testimony of Detective Kristin Cole to obtain a tainted conviction, but also, the prosecution abdicated its independent constitutional duty to correct the false impression of facts left with the court and the jury, thereby violating petitioner's vested constitutional rights to a fair trial and jury.

(Pet., ECF No. 1, PageID.6-10, 19-26.)  Respondent has filed an answer to the petition (ECF No. 16) stating that the grounds should be denied because the petition is untimely with respect to issues X-XIII; procedurally defaulted with respect to Petitioner's issues II, IV-VI, VIII, and X-XIII; and meritless with respect to all of Petitioner's issues.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that several of the grounds are procedurally defaulted and the remainder are without merit. Accordingly, I recommend that the petition be denied.

## Discussion

I.    Factual allegations

Many of the facts that were the subject of testimony at Petitioner's trial were undisputed.  On November 2, 2010, Petitioner picked up a twelve-year-old girl, the daughter of a woman he had dated, in his taxicab.  The two ended up in an apartment.  Eventually, Petitioner dropped her off with money for bus fare and to purchase an outfit.

The girl testified that while they were in the apartment, Petitioner penetrated her three different ways: digital-vaginally, digital-anally, and penile-anally.  (Trial Tr. I, ECF No. 17-3, PageID.541-543, 546-547.)  Petitioner testified that he did not touch the girl.  (Trial Tr. II, ECF No. 17-4, PageID.744, 758.)

Both the girl and Petitioner told different stories when questioned by police.  The girl initially said nothing happened.  She eventually told a nurse about the penetrations.  (Trial Tr. II, ECF No. 17-4, PageID.632.)  A sexual assault examination at the hospital disclosed injuries that were consistent with her story.  (*Id*., PageID.634-636.)

Petitioner also initially told police that nothing happened.  (*Id*., PageID.645-648.)  In a subsequent interview, however, Petitioner's story changed.  Detective Kristin Cole of the Kalamazoo Department of Public Safety testified that, during a recorded interview, Petitioner acknowledged that even though he first said she was never in the apartment, she actually was.  (*Id*., PageID.720.)  The detective testified further that even though Petitioner first said he did not touch her, he eventually admitted he "might have touched her down there" (*id.*), and then that his fingers might have gone into the openings (*id*., PageID.721), and then that he pressed his penis against her anus, but stopped (*id*., PageID.721-722), and then that he may have put his thumb in her anus (*id*., PageID.722).

The jury obviously found the victim's testimony to be credible and Petitioner's testimony to be incredible.  They deliberated for less than two hours before returning their verdict of guilty as to all three penetrations.  (*Id*., PageID.798-803.)

The prosecutor and defense agreed that the guidelines were properly scored.  The prior record variable score, offense variable score, and Petitioner's status as a habitual offender-third offense, yielded a minimum sentence range of 135 to 337 months.  (Sentencing Tr., ECF No. 17-5, PageID.809.)  The trial court's discretion to impose a minimum sentence in that range was constrained.  Because Petitioner was 17 years' old or older, and the victim was younger than 13 years, the minimum sentence could not be less than 25 years.  MICH. COMP. LAWS § 750.520b(2)(b).  The court sentenced Petitioner as described above.

Petitioner, with the assistance of counsel, directly appealed his convictions raising the first two issues identified above.  (Pet'r's Br., ECF No. 17-7, PageID.937.)  By way of a Standard 4 pro per brief, Petitioner raised the third issue regarding trial counsel's failure to advise him regarding a plea offer.  (Pet'r's Standard 4 Br., ECF No. 17-7, PageID.976.)  On April 24, 2012, the Michigan Court of Appeals issued an opinion and order affirming the trial court with respect to the first two issues, but remanding the matter to the trial court to conduct an evidentiary hearing with respect to the third issue.  (Mich. Ct. App. Op. & Order, ECF No. 17-7, PageID.928-933.)

The trial court conducted the evidentiary hearing on July 25, 2012.  (*Ginther* Hr'g Tr., ECF No. 17-6.)  Petitioner testified that in the middle of the trial the prosecutor offered to permit Petitioner to enter a plea of guilty to a charge of second degree criminal sexual conduct with an agreed sentence of 86 months to 30 years.  (*Id.*, PageID.829-831.)  Petitioner recalled a conversation with counsel about the offer, but he claimed counsel never adequately explained that offer but simply advised Petitioner to stand on his claims of innocence.  (*Id.*, PageID.838-840.)

Counsel testified to a significantly different conversation.  (*Id.*, PageID.870-875.) Counsel indicated that the prosecutor feared the victim might not be able to testify.  (*Id.*, PageID.868.)  For that reason, immediately before her scheduled testimony, the prosecutor made the plea offer.  (*Id.*, PageID.869.)  Counsel told Petitioner the terms of the offer and contrasted the offer with the potential of a sentence of at least 25 years and potentially life if Petitioner were convicted of the crimes with which he had been charged.  (*Id.*, PageID.873, 876.)  Counsel noted that even if the victim did not testify, the testimony of the detective regarding Petitioner's admissions while in custody might be sufficient to permit the jury to find Petitioner guilty.  (*Id.*, PageID.872-873.)

Counsel said that Petitioner insisted on his innocence and refused to accept the offer.  (*Id*., PageID.874-875.)  He communicated Petitioner's response to the judge as a "definite no."  (*Id*.)

The court found counsel's account credible and, in light of counsel's testimony, found Petitioner's claim had no merit.  (*Id*., PageID.904-922.)  The court of appeals affirmed that determination.  (Mich. Ct. App. Op. After Rem., ECF No. 17-7, PageID.1-3.)

Petitioner then turned to the Michigan Supreme Court, filing a pro per application for leave to appeal raising the same three issues he had raised in the court of appeals.  (Appl. for Leave to Appeal, ECF No. 17-8, PageID. 1017-1019.)  The supreme court denied leave by order entered April 1, 2013.  (Mich. Order, ECF No. 17-8, PageID.1015.)

On July 23, 2013, Petitioner filed a motion for relief from judgment in the trial court raising the issues identified above as IV-IX.  (Memo. of Law, ECF No. 17-9, PageID.1029-1030.)  By opinion and order entered December 16, 2013, the trial court denied Petitioner's motion.  (Op. & Order, ECF No. 17-13.)  The trial court determined all the issues were meritless and that Petitioner had failed to demonstrate cause for failing to raise them on direct appeal or any resulting prejudice.  (*Id*., PageID.1116.)  Petitioner filed applications for leave to appeal the trial court's decision in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered May 19, 2014, and March 31, 2015, respectively.  (Mich. Ct. App. Ord., ECF No. 17-14, PageID.1118; Mich. Ord., ECF No. 17-15, PageID.1188.)

Petitioner returned again to the trial court.  He filed motions and briefs to which this Court is not privy because the trial court rejected them as violative of Michigan Court Rule 6.502(G).  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-18, PageID.1268; Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-19, PageID.1277; Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-21,

PageID.1282-1283.)    That rule precludes successive motions for relief from judgment. Mich. Ct. R. 6.502(G).

Petitioner filed applications for leave to appeal the trial court's decisions in the Michigan Court of Appeals and the Michigan Supreme Court.  Those courts denied leave by orders entered January 29, 2016, and December 28, 2016, respectively.  (Mich. Ct. App. Ord., ECF No. 17-22, PageID.1285); *People v. Haney*, 888 N.W.2d 64 (Mich. 2016).  Only by way of Petitioner's application in the Supreme Court is it apparent that he sought to raise the issues identified as X-XIII above on this round of review in the Michigan Courts.  (Appl. for Leave to Appeal, ECF No. 17-23, PageID.1309-1312.)

Before Petitioner filed his applications for leave to appeal, but after the trial court refused to accept Petitioner's successive motions for relief from judgment, on December 2, 2015, Petitioner filed his petition in this Court.  Petitioner also filed a motion to stay these proceedings pending exhaustion of issues X-XIII in state court.  The Court denied Petitioner's request for stay by opinion and order dated January 21, 2016.  (Op. & Order, ECF Nos. 7, 8.)

II.    AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court

proceeding."   28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).   In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655.  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in

their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

III.    Procedural Default

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d at 436-37; *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim. *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

With respect to issues X-XIII, the last reasoned opinion is the Michigan Supreme Court's December 28, 2016, order which states in its entirety:

> On order of the Court, the application for leave to appeal the January 29, 2016 order of the Court of Appeals is considered, and it is DENIED, because the defendant's motion for relief from judgment is prohibited by MCR 6.502(G). The motion for judicial notice is DENIED.

*Haney*, 888 N.W.2d at 64. The Supreme Court's statement that Petitioner's motion raising issues X-XIII is prohibited is based on Michigan Court Rule 6.502(G) which provides "one and only one motion for relief from judgment may be filed with regard to a conviction." MICH. CT. R. 6.502(G)(1). Because Petitioner failed to include issues X-XIII in his first motion for relief from judgment, he was procedurally barred from raising them later.

The procedural default bar, however, applies only if Rule 6.508(G) is an adequate and independent state law procedural rule. A state law procedural rule is adequate and independent when it was "firmly established and regularly followed" at the time of the asserted procedural default. *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir. 1998) (citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). In assessing how "firmly" a state procedural rule has been established, the critical inquiry is whether, viewed from the time of the petitioner's later significant actions or inaction, the petitioner could be deemed to have been apprised of the procedural rule's existence. *Luberda v. Trippett*, 211 F.3d 1004, 1006-07 (6th Cir. 2000). Because Rule 6.508(G) was enacted in 1995 and Petitioner's conviction and appeals took place more than ten years thereafter, Rule 6.508(G) was a "firmly established" procedural rule for purposes of Petitioner's action. *See Luberda,* 211 F.3d at 1007; *Rogers*, 144 F.3d at 994.

The procedural bar to consideration of issues X-XIII is certainly no surprise to Petitioner. This Court recognized that Petitioner's issues X-XIII would be procedurally defaulted in the opinion denying Petitioner's motion for stay. (Op., ECF No. 7, PageID.130-131.)

10

When a petitioner has procedurally defaulted in the state courts, the federal habeas court will only entertain the defaulted issue if the petitioner can show "cause" for the procedural default and "actual prejudice" as result of the alleged federal violation or can show actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999); *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994).  To show cause sufficient to excuse a failure to raise claims on direct appeal, Petitioner must point to "some objective factor external to the defense" that prevented him from raising the issue in his first appeal.  *Murray*, 477 U.S. at 488; *see McCleskey v. Zant*, 499 U.S. 467, 497 (1991).  Petitioner has not attempted to explain his failure to raise in his first motion for relief from judgment the issues that he attempted to raise in his second motion.  He cannot attribute the failure to counsel, because he was proceeding pro per when he filed his first motion.  His failure to raise the issues then remains unexplained.

Where a petitioner fails to show cause, the court need not consider whether he has established prejudice.  *See Engle*, 456 U.S. at 134 n.43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985).  Petitioner also has not demonstrated that manifest injustice would result because he has not made a colorable claim of innocence; he has not shown that any constitutional error "probably" resulted in the conviction of one who was actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 322 (1995) (citing *Murray*, 477 U.S. at 495).  This requires a showing "that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'"  *Coleman v. Mitchell*, 244 F.3d 533, 540 (6th Cir. 2001) (quoting *Schlup*, 513 U.S. at 329).  Petitioner has made no such showing here.  Indeed, he offers nothing that might render the victim's testimony any less credible or his testimony any more credible.  Accordingly, I conclude that habeas review of issues X-XIII is barred by Petitioner's procedural default.

IV.    Leading Questions (Habeas Issue I)

On his direct appeal, Petitioner argued that the prosecution's use of leading questions to interrogate the victim was improper under state law.  (Pet'r's Br., ECF No. 17-7, PageID.952-955.)  Petitioner specifically described his challenge to the trial court's abuse of discretion in permitting such leading questions as a challenge to "preserved **nonconstitutional** error."  (*Id.*, PageID.955) (emphasis added).  The Michigan Court of Appeals resolved the question solely by reference to state law.  (Mich. Ct. App. Op., ECF No. 17-7, PageID.928-929.)

Petitioner raised the issue in this Court in exactly the same way as he raised it in the state appellate courts.  (Pet., ECF No. 1, PageID.6.)  He supported it here with the argument from his brief on direct appeal, including the description that he was challenging preserved nonconstitutional error.  (Pet'r's Br., ECF No. 1-1, PageID.44-47.)

Respondent claims that the issue, as raised by Petitioner, was non-cognizable. (Answer, ECF No. 16, PageID.191.)  Respondent is correct.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In reply to Respondent's challenge to the cognizability of this issue, for the first time, Petitioner presents it as a federal constitutional issue.  He argues the leading questions denied

him a fundamentally fair trial and violated his right to due process.  (Pet'r's Reply Br., ECF No. 22, PageID.1371.)  In support he quotes the court in *Lambright v. Lewis*, 932 F. Supp. 1547 (D. Ariz. 1996) as holding "[v]iolation of state law constitutes a violation of his federal constitutional right to due process under the Fourteenth Amendment." *Id*. at 1567-1568.  The quoted language, however, is drawn from defendant Lambright's argument, not the court's holding.  Indeed, as the Ninth Circuit Court of Appeals made clear when Lambright appealed the district court's rejection of his claim, "[a]n error of state procedure is not, *ipso facto*, federal constitutional error." *Lambright v. Stewart*, 191 F.3d 1181, 1183 (9th Cir. 1999) (en banc).

Although the district court's decision in *Lambright* does not stand for the proposition Petitioner raises, it is squarely on point for another proposition.  Lambright, like Petitioner, raised his underlying issue in the state appellate courts purely as an issue of state law, not as an issue of federal constitutional law.  *Lambright*, 932 F. Supp. at 1568.  The federal constitutional claim, therefore, was unexhausted.  *Id*.  At that stage of the proceedings, no remedy remained in the state courts.  *Id*. at 1569.  Accordingly, Lambright's failure to raise it in the state courts constituted a procedural default.  *Id*.  The same result follows under the case law of this circuit.

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly

presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Exhaustion is only a problem, however, if there is a state court remedy available for Petitioner to pursue, thus providing the state courts with an opportunity to cure any constitutional infirmities in the state court conviction. *Rust*, 17 F.3d at 160. If no further state remedy is available to Petitioner, exhaustion does not present a problem, but the claim is procedurally defaulted and the federal court must determine whether cause and prejudice exists to excuse the failure to present the claim in state court. *Id.*

Under Michigan law effective August 1, 1995, a defendant may file one motion for relief from judgment under Michigan Court Rule 6.500 *et. seq*. *See* MICH. CT. R. 6.502(G)(1). Petitioner already has filed his one allotted motion. Any motion now would be rejected under Rule 6.502(G). He therefore has no available remedy. Thus, the court must consider whether there is cause and prejudice to excuse Petitioner's failure to present the claims in state court. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Rust*, 17 F.3d at 160. As discussed above with respect to issues X-XIII, Petitioner offers no cause for his failure to include the leading question/due process issue in his first motion for relief from judgment. Accordingly, his procedural default bars review of the issue by this Court.

14

V.    <u>Prejudicial Reference to Criminal History (Habeas Issue II)</u>

Petitioner's age was at issue in his prosecution because the CSC-I statute mandates a minimum sentence of no less than 25 years if the victim is less than 13 years of age and the perpetrator is 17 years of age or older.  MICH. COMP. LAWS § 750.520b(2)(b).  The prosecutor's questioning of Detective Kristin Cole included the following exchange:

Q    Are you aware of Mr. Haney's age?

A    Yes. I believe he's 52 now.

Q    Do you know what his birth date is?

A    I think he's born in '58 but I couldn't tell you the month and day.

Q    Okay. And how are you aware of that?

A    Well, during the course of my part of the investigation, I have to run a criminal history.  Also some other paperwork that has to be sent through Secretary of State, the Law Enforcement Information Network which comes back stating this is that person and this is his correct date of birth and address and such.

Q    And that's how you would be aware of it?

A    Correct.

(Trial Tr. II, ECF No. 17-4, PageID.711-712.)  Petitioner argues that Detective Cole's testimony unfairly prejudiced him because it implied that he had a criminal history.

The Michigan Court of Appeals flatly rejected Petitioner's argument:

In order to avoid the danger of unfair prejudice, "the general rule is that evidence tending to show the commission of other criminal offenses by the defendant is inadmissible on the issue of his guilt or innocence of the offense charged." *People v DerMartzex*, 390 Mich 410, 413; 213 NW2d 97 (1973).  Such evidence may only be introduced under MRE 404(b) or under the res gestae exception.  *People v Key*, 121 Mich App 168, 179-180; 328 NW2d 609 (1982); *People v Smith*, 119 Mich App. 431, 436; 326 NW2d 533 (1982).  But evidence is not subject to an MRE 404(b) analysis merely because it discloses a bad act; it may be relevant for some other purpose and admissible under MRE 401 without regard to MRE 404(b) as long as it is not unduly prejudicial under MRE 403.

15

Here, defendant was charged with three counts of first-degree criminal sexual conduct, committed by an individual 17 years of age or older against an individual less than 13 years of age. MCL 750.520b(2)(b). An element that the prosecution had to prove was that defendant was 17 years of age or older at the time of the incident. The prosecutor asked Detective Cole if she knew how old defendant was and—arguably for foundational purposes—how Detective Cole knew defendant's age. Detective Cole stated that "during the course of my part of the investigation, I have to run a criminal history." She also added that she has to send paperwork through the Secretary of State and the Law Enforcement Information Network. Because Detective Cole's testimony established defendant's age, it had a tendency to make the existence of a fact of consequence to the determination of the action more probable than it would have been without the evidence and, thus, was relevant for purposes of proving the elements of MCL 750.520b(2)(b). See MRE 401.

MRE 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." Detective Cole's implication that defendant had a criminal history may have been prejudicial if it caused the jury to focus on defendant's bad character. See *People v Griffin*, 235 Mich App 27, 36; 597 NW2d 176 (1999), overruled in part on other grounds *People v Thompson*, 477 Mich 146; 730 NW2d 708 (2007). However, Detective Cole's statement indicated a requirement to run a criminal history and not that defendant had a criminal history. The jury was not given any specific information concerning defendant's criminal history. Moreover, Detective Cole's testimony that she also checked through the Secretary of State limited the importance the jury could place on the criminal-history check. Under these circumstances, any prejudice from Detective Cole's testimony was minimal.

Even assuming that Detective Cole's testimony regarding the criminal-history check was unduly prejudicial under MRE 403, defendant fails to show that the testimony affected the outcome of the lower court proceedings. See *Carines*, 460 Mich at 763. The victim testified to acts of sexual penetration forming the basis of the conviction. When a physician and a sexual assault nurse examiner examined the victim, they both found injuries to the victim consistent with her account of the sexual assault. Defendant admitted at trial that the victim was with him on the day of the incident and that he took her to the apartment where the victim said the abuse happened. Moreover, defendant confessed to Detective Cole that he touched the victim's anus and vagina with his fingers, pressed his penis against the victim's anus, and may have penetrated the victim with his fingers. The evidence against defendant was overwhelming and clearly supported the finding of guilt beyond a reasonable doubt.

(Mich. Ct. App. Op., ECF No. 17-7, PageID.929-930.)   Put simply, the state appellate court determined that the reference was not unduly prejudicial and, even if it were, it did not affect the outcome because of the overwhelming evidence of Petitioner's guilt.

As noted above, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution.   28 U.S.C. § 2254(a).   As the Supreme Court explained in *Estelle*, 502 U.S. at 62, an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions."   *Id.* at 67-68.   Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."   *Id.* at 68.   State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.   *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation omitted); *accord Coleman*, 268 F.3d at 439; *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).   This approach accords the state courts wide latitude in ruling on evidentiary matters.   *Seymour*, 224 F.3d at 552.

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently.   The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts.   *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).   Petitioner has not met this difficult standard.

The Petitioner's argument, and the Michigan Court of Appeals' analysis, indicate that if the reference were prejudicial, the prejudice would follow from putting Petitioner's prior

"bad" or criminal acts before the jury.  The fear is that the jury would conclude from Petitioner's previous bad behavior that he had a propensity to commit the charged crimes.   There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle v. McGuire*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process. *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.  Absent such precedent, Petitioner cannot show that the state court's determination of the issue is contrary to, or an unreasonable application of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

## VI.   Failure to Communicate Plea Offer (Habeas Issue III)

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

In *Lafler v. Cooper*, 132 S. Ct. 1376 (2012), the Supreme Court held that, in a claim alleging that counsel was ineffective in advising a defendant about a plea offer, the *Strickland* standard continues to apply. As in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the prejudice prong of *Strickland* turns on whether, absent counsel's errors, the result of the plea process would have been different. *See Lafler*, 132 S. Ct. at 1385-87. In such circumstances, "defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel." *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012).

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The Michigan Court of Appeals resolved Petitioner's claim as follows:

> To prevail on his claim of ineffective assistance of counsel, defendant must meet the two-part test stated by the United States Supreme Court in *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001). First, defendant must show that his counsel's performance "fell below an objective standard of reasonableness" under prevailing professional norms. *Strickland*, 466 US at 687-688. Second,

19

defendant must show that his counsel's deficient performance prejudiced his defense. *Id*. at 687.

A defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. *Lafler*, 132 S Ct at 1384. Counsel's assistance must be sufficient to enable the defendant "to make an informed and voluntary choice between trial and a guilty plea." *People v Corteway*, 212 Mich App 442, 446; 538 NW2d 60 (1995). A defense counsel must explain the range and consequences of available choices in sufficient detail to enable a defendant to make an intelligent and informed choice, although a counsel cannot possibly ensure that a defendant comprehends everything. *People v Jackson*, 203 Mich App 607, 614; 513 NW2d 206 (1994). Where counsel has sufficiently informed a defendant of the nature of the charges and the consequences of a plea, a defendant can make an informed and voluntary choice of whether to accept the plea offer or go to trial without a specific recommendation from counsel. *Corteway*, 212 Mich App at 446. When establishing prejudice in the context of pleas, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S Ct at 1384. In an instance where a defendant rejects a plea offer based on the ineffective advice of counsel,

> a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [Id. at 1385.]

A review of the record of the July 25, 2012, evidentiary hearing shows that there was conflicting testimony regarding what happened after a plea offer was made outside the courtroom by the prosecutor. Specifically, defendant testified that he had a short conversation regarding the plea offer with his lead counsel in the courtroom. Defendant testified that he was confused by the entire proceeding and was advised by counsel to "stand on your innocence." Defendant testified that he maintained his innocence and rejected the plea offer. Lead defense counsel testified that, after receiving the plea offer, he met with defendant at a table in the holding area in the basement of the courthouse. Lead defense counsel testified that the plea offer was made in response to the victim being reluctant to testify and that he informed defendant of this fact. He also testified that he informed defendant of the specific terms of the plea offer, including the lesser charge and the shorter sentence. Lead counsel further testified that he discussed the evidence against his client, explained that penetration as it is understood in lay terms is not necessary for penetration under Michigan law, and that the plea offer was an opportunity for defendant to exercise some control over the outcome of the proceedings. Lead defense counsel testified that his client maintained that he did not have intercourse

with the victim and rejected the plea offer.  Defense co-counsel testified that he was in the hallway where the plea offer was made, that lead defense counsel left to go to the basement to talk with defendant after the offer was made, and that defendant and lead defense counsel later entered the courtroom together.  He also testified that defendant was uninterested in a plea bargain and maintained his innocence throughout his defense.

On the basis of this factual record, the trial court found the following facts: (1) lead defense counsel communicated the specific terms, including sentencing, of the plea offer to defendant in the basement holding area; (2) defendant was aware that the victim was reluctant to testify; (3) defendant was aware of the prosecution's evidence against him; (4) defendant was aware of the 25-year mandatory minimum sentence upon conviction of the CSC I charge[1]; (5) defendant discussed the offer with counsel; (6) while not giving a specific recommendation, counsel informed defendant that "this is your opportunity to exercise some control over what takes place"; (7) defendant weighed the plea offer after discussing it with counsel; (8) defendant maintained his innocence and rejected the plea offer; and (9) defendant would have rejected the plea offer regardless of defense counsel's advice. The trial court then concluded that defendant had not established a claim of ineffective assistance of counsel.

Given the testimony at the evidentiary hearing, we conclude that the trial court's factual findings are not clearly erroneous as we are not left with a definite and firm conviction that a mistake has been made.  *See Gioglio*, 296 Mich App at 20-21.  We further conclude that defendant has not established that he received ineffective assistance of counsel.  First, defendant has not shown that his counsel's performance was objectively unreasonable under prevailing professional norms. *See Strickland*, 466 US at 687-688.  Defendant's counsel explained the plea offer and the range and consequences of available choices in sufficient detail to enable defendant to make an intelligent and informed choice; after weighing his options, defendant made an informed and voluntary choice to reject the plea offer and to continue the trial.  *See Corteway*, 212 Mich App at 446; *Jackson*, 203 Mich App at 614.  Second, because defendant would have rejected the plea offer regardless of defense counsel's advice, defendant has failed to establish that, but for his attorney's advice, there is a reasonable probability of a different outcome.  *See Strickland*, 466 US at 687; *Lafler*, 132 S Ct at 1384-1385.

[1]As we noted in our prior opinion, the record defies defendant's contention that he was unaware of the 25-year mandatory minimum for the CSC I charges.  On the first day of trial and before the plea offer made in chambers, the trial court inquired about the status of the parties' plea bargain negotiations, and a discussion occurred on the record—in defendant's presence— regarding the 25-year mandatory minimum.

(Mich. Ct. App. Op. After Rem., ECF No. 17-7, PageID.926-927.)

The Michigan Court of Appeals expressly relied upon *Strickland* and *Lafler*.  Thus, it cannot be said that the court of appeals applied the wrong standard.  Moreover, the state appellate court applied the standard properly.  The court's analysis tracked the *Strickland* analysis as the *Lafler* court directed it to be applied in the context of evaluating the communication of a plea offer.  Thus, Petitioner cannot show that the state appellate court's determination of the issue is contrary to, or an unreasonable application of, clearly established federal law.

Petitioner has never really responded to the Michigan Court of Appeals' analysis of this issue.  Instead, he simply reiterates the unsuccessful arguments from his court of appeals briefs.  That argument depends entirely on Petitioner's version of the conversation between him and his counsel.  But, the trial court found the conversation did not proceed as described by Petitioner.  It concluded that counsel's description of the events was credible and found the facts accordingly.  The court of appeals concluded the trial court's findings were not clearly erroneous.  After reviewing the *Ginther* hearing transcript, the undersigned echoes that conclusion.  In the vernacular of the § 2254 standard, the trial court's factual determinations were "not unreasonable."  Indeed, they were eminently reasonable.  Petitioner is not entitled to habeas relief on his claim that counsel rendered ineffective assistance in communicating the plea offer.

VII.    General Ineffective Assistance of Trial Counsel (Habeas Issues IV-VI)

Petitioner raised the remaining habeas issues for the first time in his first motion for relief from judgment.  Petitioner alleged that, in addition to problems communicating the plea offer, his trial counsel was ineffective in other instances: (A) counsel failed to meaningfully cross-examine prosecution witnesses; (B) counsel failed to move to quash the complaint, warrant, or information; and (C) counsel failed to challenge the jury array where it was not drawn from a fair cross section of the community.  (Memo. of Law, ECF No. 17-9, PageID.1036-1046.)

22

### A.    No meaningful cross-examination (habeas issue IV)

Petitioner's presentation of this issue in the state court consisted, in its entirety, of the following: "Trial Counsel did not cross-examine any of the prosecution witnesses meaningfully." (*Id*., PageID.1037.)  Petitioner never explained how counsel's cross-examinations fell short.

Michigan Court Rule 6.502 requires the filer of a motion for relief from judgment to include "[t]he facts supporting each ground, stated in summary form . . . ."  MICH. CT. R. 6.502(C)(13).  The trial court found Petitioner's procedural failure to elaborate with supporting facts to be dispositive.  The court stated that Petitioner could "'not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims . . . .'" (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-13, PageID.1112) (quoting *People v. Watson*, 629 N.W.2d 411, 421-422 (Mich. Ct. App. 2001)).

Petitioner's failure operates as a waiver or constitutes an abandonment of the issue. "A state court conclusion that an issue was waived is considered a procedural default." *Watkins v. Nepel*, No. 2:14-cv-13200, 2017 WL 2117896, *9 (E.D. Mich. May 16, 2017) (citing as an example *Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012); *see also Anes v. Campbell*, No. 1:16-cv-233, 2017 WL 3136381, *13-14 (W.D. Mich. June 26, 2017), *report and recommendation adopted*, 2017 WL 3115498 (W.D. Mich. July 21, 2017), *certificate of appealability denied*, 2018 WL 741696 (6th Cir. Jan. 4, 2018) (court determined claim was procedurally defaulted where state court refused to consider claim because the petitioner had merely announced his position and left it to the state court to discover and rationalize the basis for the claim); *Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (court determined issue was procedurally defaulted where state court considered it abandoned because of inadequate briefing).

Petitioner offers no cause for his procedural default; accordingly, the default bars the Court's review of this issue.

### B.        No challenge to jurisdiction (habeas issue VI)

Petitioner next contends: (1) there were state-law procedural defects in the complaint, warrant, and information that (2) divested the trial court of jurisdiction and (3) if counsel would have raised the issues, the case would have been dismissed.  (Pet'r's Br., ECF No. 17-9, PageID.1036-1042.)  Petitioner was wrong as to each contention.

A criminal prosecution in the state of Michigan typically commences with a complaint, "a written accusation that a named or described person has committed a specified offense." MICH. CT. R. 6.101(A).  A proper complaint, in turn, can provide the basis for the court to find probable cause to support the issuance of an arrest warrant.  MICH. CT. R. 6.102.  After the accused has been arrested, the court must arraign him, MICH. CT. R. 6.104, and thereafter conduct a preliminary examination to determine whether probable cause exists to believe that an offense has been committed and that the accused committed it, MICH. CT. R. 6.110.  If the court so determines, the accused is bound over for trial in the circuit court, *id.*, and the prosecutor must file an information setting forth the substance of the accusation and, to the extent possible, the time and place of the alleged offense, MICH. CT. R. 6.112.  The accused is arraigned again in the circuit court based on the information, MICH. CT. R. 6.113, the matter then proceeds through discovery and trial or entry of a plea, depending on the case.

The trial court found that there were no state-law procedural defects in the complaint, warrant, or information. (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-13, PageID.1112-1113.)  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has

recognized "'that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'"  *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76).  Accordingly, the state court's determination that the complaint, warrant, and information did not suffer from state-law procedural defects conclusively resolves the issue for purposes of habeas review.

The trial court also concluded that it had jurisdiction over Petitioner and his prosecution despite Petitioner's claims of procedural defects in the complaint, warrant, and information.  This Court is also bound by the state court's conclusion that it had jurisdiction over Petitioner and his criminal prosecution.  Specifically with regard to jurisdictional issues, the Sixth Circuit has stated that "a state court's interpretation of state jurisdictional issues conclusively establishes jurisdiction for purposes of federal habeas review."  *Strunk v. Martin*, 27 F. App'x 473, 475 (6th Cir. 2001).

Finally, where there are no procedural defects in the complaint, warrant, or information and the trial court has jurisdiction, it is not ineffective assistance of counsel to fail to raise such challenges.  The Sixth Circuit has held that "'counsel cannot be ineffective for a failure to raise an issue that lacks merit.'"  *Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003) (quoting *Greer*, 264 F.3d at 676).  *See also Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

For these reasons, the state courts' rejection of Petitioner's ineffective assistance claim is neither contrary to, nor an unreasonable application of, *Strickland*, the clearly established federal law regarding such claims.

### C.   No challenge to the jury array (habeas issue V)

Petitioner next contends that counsel was ineffective for failing to challenge the jury array where it did not represent a fair cross section of the community.  Laudably, Petitioner's argument identifies and relies upon the clearly established federal law with respect to this issue: *Taylor v. Louisiana*, 419 U.S. 522 (1975) and *Duren v. Missouri*, 439 U.S. 357 (1979).  (Memo. of Law, ECF No. 17-9, PageID.1043.)  The trial court also relied on those authorities in rejecting Petitioner's claim:

> The Sixth Amendment of the United States Constitution entitles a criminal defendant to an impartial jury drawn from a cross section of the community.  A defendant, however, is not entitled to a jury pool that exactly mirrors the make-up of the community.  *Taylor v. Louisiana*, 419 US 522, 538 (1975).  To establish a prima facie violation of the fair cross-section requirement a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  In this case, Defendant has first failed to show that there was an underrepresentation or that if there was an underrepresentation that it was due to systematic exclusion of African-Americans in the jury-selection process.  Accordingly, this Court finds Defendant's argument of ineffective counsel meritless on these grounds.

(Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-13, PageID.1114.)

Petitioner acknowledges that the trial court applied the correct standard, but argues that the court applied it unreasonably.  (Memo. of Law, ECF No. 17-9, PageID.1046.)  Petitioner contends that he satisfied *Duren* with the following argument:

> Defendant makes reference to the 2004 US Census Bureau's Wayne County, Michigan general Demographic Characteristics survey as his "offer of proof" for this Court establishing disparity in his jury composition not being reflective of a "fair cross section" of the community at the time of his prosecution. The census conducted by the United States Census Bureau established the demographic of racial makeup of Wayne County, and Kalamazoo.  Clearly this demonstrates that here existed a drastic "under representation" of African-Americans in the array from which Defendant's jury was selected.

(Memo. of Law, ECF No. 17-9, PageID.1045.)   Although Petitioner references the census document, he does not actually provide it.   Moreover, he never addresses the third *Duren* requirement of systematic exclusion in the jury-selection process.

It is noteworthy that the system for selecting juries in the Kalamazoo courts from the mid-1980's to mid-1992 was flawed and resulted in the underrepresentation of African-American jurors in some jury arrays.  *People v. Hubbard*, 552 N.W.2d 493 (Mich. App. 1996) overruled in *People v. Bryant*, 822 N.W.2d 124 (Mich. 2012).  The systematic problem identified by the *Hubbard* court, however, had been corrected for more than a decade when Petitioner's pool of jurors was selected.  *Hubbard*, 552 N.W.2d at 500.

In light of substantial Michigan authority determining that a previously identified flaw in Kalamazoo County's jury selection process had been corrected, it is patently reasonable for counsel to **not** raise the fair-cross-section argument simply because a particular pool of jurors does not reflect the community.   The trial court's determination that the fair-cross-section argument was without merit here further demonstrates the reasonableness of counsel's action.   The trial court's determination that counsel was not ineffective is neither contrary to, nor an unreasonable application of, *Strickland* and *Duren*.   Petitioner is not entitled to habeas relief on this issue.

VIII.   Prosecutor Suppressed Exculpatory Evidence (Habeas Issue VII)

Under *Brady v. Maryland,* 373 U.S. 83 (1963), "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.   The Supreme Court has held that "[t]here are three components of a true *Brady* violation:  [t]he evidence at issue must be favorable to the accused, either because it is exculpatory,

or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  The trial court rejected Petitioner's *Brady* claim because, though he provides pages of legal analysis, Petitioner never identifies the evidence the prosecutor purportedly upheld. (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-13, PageID.1114; Memo. of Law, ECF No. 17-9, PageID1047-1051.)  Petitioner has not identified the exculpatory evidence in this Court either. (Pet'r's Reply Br., ECF No. 22, PageID.1376.)  Under the circumstances, Petitioner has failed to demonstrate that the state court's rejection of his claim is contrary to, or an unreasonable application of, *Brady*.  Accordingly, Petitioner is not entitled to habeas relief on his *Brady* claim.

## IX.    Denied Polygraph (Habeas Issue VIII)

Petitioner next claims that the police, the prosecution, and defense counsel failed him, and denied him the right to present a defense, because they did not inform Petitioner of his right to take a polygraph examination.  The trial court rejected Petitioner's claim, reasoning that, because the results of the polygraph would have been inadmissible, Petitioner could not demonstrate prejudice or any impact on the trial result.  (Kalamazoo Cnty. Cir. Ct. Order, ECF No. 17-13, PageID.1115.)  Whether considered through the lens of prosecutorial misconduct or ineffective assistance of counsel, to succeed on his claim, clearly established federal law would require that Petitioner demonstrate prejudice.  See *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (court held that for relief to be granted on a claim of prosecutorial misconduct, the misconduct must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'") (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *Strickland*, 466 U.S. at 687-688 (court held that counsel's deficient performance must prejudice the defendant resulting in an unreliable or fundamentally unfair outcome).

The Supreme Court has never held that, as a constitutional matter, polygraph evidence must be admitted in a criminal trial or that polygraph evidence is reliable. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308, n. 8 (6th Cir. 1999) (noting that the Supreme Court in *Scheffer* "acknowledged that there is no consensus in the scientific community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials"). The admissibility of polygraph evidence is generally a state law matter which does not raise issues of constitutional magnitude cognizable on habeas review. *See Bolton v. Berghuis*, 164 F. App'x 543, 550 (6th Cir. 2006); *Maldonado v. Wilson*, 416 F.3d 470, 477–78 (6th Cir. 2005) (collecting cases); *see also Poole v. Perini*, 659 F.2d 730, 734–35 (6th Cir. 1981). Accordingly, to the extent that Petitioner claims that he was entitled to a polygraph examination under state law, he is not entitled to relief from this Court because such a claim is not cognizable upon federal habeas review.

Petitioner's claim that he was denied due process or his right to present a defense also fails. Michigan law provides that a defendant charged with first-degree criminal sexual conduct "shall be given a polygraph examination or a lie detector test if the defendant requests it . . . ." MICH. COMP. LAWS § 776.21. Even if Petitioner had requested a polygraph examination, Petitioner has not provided any evidence he would have passed it. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted). Moreover, even if Petitioner would have passed a polygraph examination, the results of a polygraph examination are inadmissible at trial under Michigan law. *See People v. Phillips*, 666 N.W.2d 657 (Mich. 2003); *People v. Jones*, 662 N.W.2d 376 (Mich. 2003). Thus, even if the

prosecutor and/or counsel erred by failing to offer Petitioner the opportunity to take a polygraph test, Petitioner cannot show the requisite prejudice to the trial result.

XII.    Ineffective Assistance of Appellate Counsel (Habeas Issue IX)

Finally, Petitioner claims he received ineffective assistance from his appellate counsel for failing to raise habeas issues IV-VIII.  An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)).  To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*

Petitioner did not succeed in convincing the trial court that his appellate counsel was constitutionally ineffective.  The trial court reasoned: "[r]aising meritless issues would not have changed the outcome, so this Court finds that Defendant has failed to establish any outcome determinative prejudice."  (Kalamazoo Cnty. Cir. Ct. Op. & Order, ECF No. 17-13, PageID.1116.)  The trial court's insistence on a demonstration of prejudice is entirely consistent with clearly established federal law.  *Strickland*, 466 U.S. at 687-688.  Moreover, for the reasons stated above, the trial court's determinations that habeas issues IV-VIII are meritless are reasonable on this

record.  And, because "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial[,]" *Coley*, 706 F.3d at 752, Petitioner is not entitled to habeas relief.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.


Dated:  May 7, 2018                                    /s/ Ray Kent
                                                       United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(c); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).